[Civ. No. B006073. Second Dist., Div. Two. Aug. 20, 1985.]

GARY LEHTO, Plaintiff and Appellant, v.
CITY OF OXNARD, Defendant and Respondent.

**COUNSEL**

Ronald Dean, Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Browne Greene, Horvitz & Levy, Barry R. Levy, Andrew N. Chang and Janice M. Corsino for Plaintiff and Appellant.

Lawler & Ellis, Lawler, Bonham & Walsh, Korman Dorsey Ellis and Margot Davis for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Plaintiff Gary Lehto, severely injured in a collision between an automobile in which he was a passenger and the vehicle driven by one Raul Carbajal, instituted this action to recover damages from defendant City of Oxnard, et al. (City) for the alleged negligence of certain police officers in failing to prevent Carbajal from driving while under the influence of alcohol. The trial court granted the City's motion for judgment on the pleadings and this appeal follows.[1] We affirm.

A judgment on the pleadings is similar to a judgment following the sustaining of a demurrer and the standard of appellate review is the same. Like the demurrer, the motion for judgment on the pleadings is confined to the face of the pleading under attack, and the properly pleaded operative facts must be accepted as true. (*Kathleen K.* v. *Robert B.* (1984) 150 Cal.App.3d 992, 994 [198 Cal.Rptr. 273, 40 A.L.R.4th 1083]; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338].) However, contentions, deductions and conclusions of fact or law alleged in the complaint are not considered in judging the sufficiency of the pleading. (See *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 [195 Cal.Rptr. 576].) The fundamental question for the reviewing court is whether, disregarding imperfections of form

---

[1]The instant appeal involves only the City of Oxnard. Defendant Carbajal and other named defendants remain as parties to the action.

which could be cured by amendment, the facts alleged entitle the plaintiff to *any* relief. (*Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321 [195 Cal.Rptr. 84].)

Plaintiff's first amended complaint alleged seven causes of action, only one of which concerns this appeal. The pertinent alleged facts may be summarized as follows. On May 18, 1980, police officers employed by the City of Oxnard, and acting within the scope of their employment, stopped a vehicle being driven by defendant Carbajal for a traffic violation. During the course of the stop, according to the complaint, the officers knew, or should have known that "Raul Carbajal was under the influence of intoxicating liquor and that he was totally incapable of safely operating a motor vehicle."

Based upon the foregoing, the complaint further alleged: "Under the statutory and decisional law of the State of California, together with the enactments, regulations, and customs of defendant CITY OF OXNARD and its Department of Police said defendants, and each of them, were under a *mandatory duty* to use due care to take precautions to prevent said RAUL CARBAJAL from further driving the automobile in his intoxicated condition." (Italics added.) The officers, however, allowed Carbajal to continue driving.

At some undisclosed later time, Carbajal was involved in a head-on collision with the vehicle in which plaintiff was a passenger. The complaint thus alleged that plaintiff sustained severe personal injuries as a result of the officers' negligence in failing to discharge their "*mandatory duty*" to prevent Carbajal from driving.

Government Code section 846 provides: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." The trial court based its ruling in favor of the City squarely on the immunity provided by that statute.

Under our system of law the power to make an arrest of another individual is a power grudgingly given in furtherance of the public interest in preventing crime. It is a power which is strictly limited and the abuse of such power can result in civil liability. It would be contrary to public policy, simultaneously, to permit the imposition of civil liability for a failure to exercise the power. Hence the immunity is a logical adjunct to the public policy.

Plaintiff, in apparent recognition of this fact, has, on this appeal, eschewed any claim that the officers had a duty to arrest Carbajal but instead

has attempted to create a duty on the part of the officers to take some other action to prevent Carbajal from continuing to drive. The suggested alternatives were to disable the vehicle, confiscate the keys or force Carbajal to depart the scene by some other mode of transportation.

While plaintiff concedes that the choice of a course of action was within the officers' "discretion" he contends that they had a duty to take some action. This duty, as noted, is said to repose in some unspecified provision of California statutory and decisional law augmented by regulations, policies and customs of the Oxnard Police Department.

Plaintiff's emphasis of the "mandatory" nature of the duty is an obvious attempt to plead around the provisions of Government Code section 820.2[2] and into Government Code section 815.6.[3] This attempt was undoubtedly prompted by language in *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461], which we will discuss *infra*.

Two recent cases, *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894], and *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137], cases which are factually dissimilar but conceptually similar to the case at bench, have served to delineate the applicable principles.

In approaching the issue raised by this appeal, we first note that "the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 201-202; *Williams* v. *State of California, supra,* 34 Cal.3d 18.) In the case at bench, the negligence claim against the City rests on the officers' nonfeasance in their failure to prevent Carbajal from driving while intoxicated. Accordingly, we first consider the threshold question of duty.

As a general rule, one owes no duty to control the conduct of another nor to warn those endangered by such conduct. Such a duty may exist, however, if "(a) a special relation exists between the actor and the third

---

[2]Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[3]Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." (Rest.2d Torts, § 315, p. 122; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Bonds* v. *State of California* ex rel. *Cal. Highway Patrol* (1982) 138 Cal.App.3d 314, 318 [187 Cal.Rptr. 792].) Other than cases involving landowners and their invitees, those cases finding the existence of a special relationship most frequently involve some act or omission on the part of the defendant that either created a risk or increased an existing risk to a known person. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].)

It has been recognized by the California Supreme Court that "[a]pplication of these general principles in the area of law enforcement and other police activities has produced some confusion and conflict. To an extent, the concepts are muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public." (*Williams* v. *State of California, supra,* 34 Cal.3d at pp. 23-24.)

In *Williams* v. *State of California, supra,* the plaintiff was injured when a piece of heated brake drum from a passing truck was propelled through the windshield of her automobile. She brought suit against the state alleging nonfeasance—failure to test for the heat of the object which struck her, failure to secure identification of witnesses, and failure to attempt investigation or pursuit of the owner or occupant of the truck whose brake drum had caused her injuries.

The *Williams* court concluded that the plaintiff had not stated a cause of action because she failed to establish a duty of care owed by the state. The court held that a plaintiff in order to create a duty, must show an affirmative act which created or increased a risk of harm to plaintiff, an omission or failure to act after a promise was made to plaintiff, or the creation of a special dependency relationship in which plaintiff relied on official conduct. None of those circumstances were present there.

In *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, the plaintiff was stabbed in a laundromat that was under police surveillance. Her complaint alleged that the investigating officers knew of other stabbings in the same or nearby laundromats, knew that plaintiff was in the laundromat, and identified a man on the premises as a likely perpetrator of a stabbing that

had occurred the evening before. As officers watched, the suspect entered and left the laundromat several times. They neither intervened nor warned the plaintiff, and she was stabbed. Her complaint alleged causes of action for intentional and negligent infliction of emotional distress, negligent investigation, failure to protect, and failure to warn.

Concluding that the complaint stated no cause of action for negligence, the court held that a police officer does not act affirmatively to increase the risk of harm by failing to stop an individual from acting dangerously. (*Id.* at pp. 208-209.)

In the instant case, there is a total absence of the factors articulated in either *Williams* or *Davidson* as being necessary for the imposition of liability on the City under general tort theory. The officers involved did not create the peril to plaintiff, they did not voluntarily assume a special duty to protect him, they made no promise or statement to induce his reliance, nor did they increase the risk to him that would have otherwise existed. (Cf. *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553].) The fact that plaintiff as a member of the motoring public might have been a reasonably foreseeable victim, by itself, is not enough to establish a special relationship with the officers or impose on them a duty to use due care. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 209; *Harris* v. *Smith* (1984) 157 Cal.App.3d 100, 105 [203 Cal.Rptr. 541].)

Relying on *Green* v. *City of Livermore, supra,* 117 Cal.App.3d 82, plaintiff argues, however, that he need not plead the existence of a special relationship because the officers were under a mandatory duty (see Gov. Code, § 815.6) to prevent an obviously intoxicated person from operating a motor vehicle.

In *Green,* which was decided before either *Williams* or *Davidson,* police officers had stopped a vehicle with three occupants, all of whom were intoxicated. The driver was arrested, but no action was taken to prevent the others from operating the automobile. One of the passengers drove the car and was involved in an accident which caused injury and death to innocent third persons. As in our case, the plaintiffs alleged that enactments of the city and its police department imposed a mandatory duty to either disable the vehicle, impound it, or remove its keys.

In reversing a judgment of dismissal entered after the sustaining of a demurrer without leave to amend, the *Green* court concluded that because the officers' duty allegedly was predicated on an enactment imposing a mandatory duty, pursuant to Government Code section 815.6, the plaintiffs did not have to plead the existence of any special relationship in order to create

a duty of care. The fact that the complaint failed to allege the specific statute or rule that imposed this duty was found to be inconsequential. The court further determined that once the officers made the discretionary decision to investigate the original drunk driving incident and to arrest the driver, any negligence in performing the ministerial acts of the investigation was beyond the protection of the statutory immunity for discretionary acts.

To the extent that *Green* predicated a duty of care to the public at large on general tort theory, its analysis has been implicitly overruled by *Davidson* and *Williams*. (See *Harris* v. *Smith, supra,* 157 Cal.App.3d at p. 108; see also *Rose* v. *County of Plumas* (1984) 152 Cal.App.3d 999, 1006, fn. 6 [199 Cal.Rptr. 842].)[4] What remains of *Green* then is its reliance on section 815.6 to relieve a plaintiff from pleading the existence of a special relationship.

■ Government Code section 815.6 applies to public entities the familiar rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence. (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1980) § 2.41, p. 93.) As noted by the Law Revision Commission when the section was enacted: "Public entities should be liable for the damages that result from their failure to exercise reasonable diligence to comply with applicable standards of safety and performance established by statute or regulation. Although decisions relating to the facilities, personnel or equipment to be provided in various public services involve discretion and public policy to a high degree, nonetheless, when minimum standards of safety and performance have been fixed by statute or regulation—as, for example, the duty to supervise pupils under Education Code section 13557 [now Ed. Code, § 44807] and the rules of the State Board of Education, the duty to provide lifeguard service at public swimming pools under Health and Safety Code section 24101.4 and, the regulations of the State Department of Public Health, or the duty to meet applicable requirements established by law in the construction of improvements—there should be no discretion to fail to comply with those minimum standards." (Recommendation Relating to Sovereign Immunity, 4 Cal. Law Revision Com. Rep. (1963) pp. 801, 816.)

Based upon the manifest intent underlying section 815.6, we think it obvious that a litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation. Only by so doing

---

[4]We note here that the *Green* court relied heavily on *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], in finding that the duty of due care owed by the arresting officers extended to the public at large. *Clemente,* however, was expressly disapproved by the Supreme Court in *Williams* v. *State of California, supra,* 34 Cal.3d at page 28, footnote 9.

may the public entity be advised of the factual and legal basis of the claim against it. (See *Jones* v. *Oxnard School District* (1969) 270 Cal.App.2d 587 [75 Cal.Rptr. 836]; *Lavine* v. *Jessup* (1958) 161 Cal.App.2d 59 [326 P.2d 238].) Without this requirement of specificity in pleading, a court would be hard pressed to determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character.

As recently observed by the Supreme Court in *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-625 [200 Cal.Rptr. 440, 677 P.2d 846]: "Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts. [Citation.] The legislative intent can usually be determined from the statutory language. [Citation.] However, when the specific language does not shed light as to the intent of the Legislature, it can be determined from other factors which indicate the intent of the Legislature. [Citation.] It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the lawmakers [citations], and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute. [Citations.]"

A review of those cases imposing a mandatory duty based upon breach of a statute or regulation, vividly demonstrates the need to allege the applicable enactment in specific terms. (See e.g., *Morris* v. *County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], duty imposed by Labor Code section 3800 that county obtain a certificate of workers' compensation coverage for all applicants for building permits; *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], duty imposed by Penal Code section 1384 to release prisoner upon dismissal of all charges; *Young* v. *City of Inglewood* (1979) 92 Cal.App.3d 437 [154 Cal.Rptr. 724], duty imposed by Business and Professions Code section 7031.5 to secure evidence that contractor applying for building permit is duly licensed; *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852], duty of state under Penal Code sections 11116.6 and 11117 to make proper record of dismissal of criminal proceedings.)

In view of these cases and others, *Green* made a quantum leap from the specific to the general when it permitted a plaintiff to allege the breach of a mandatory duty without identifying the particular enactment relied on. We must disagree with the proposition articulated in *Green* that a complaint may survive a demurrer for uncertainty where a litigant fails to plead the statute or regulation giving rise to the mandatory duty.

The *Green* rationale would also allow a plaintiff to bootstrap a general obligation to enforce the law into a general duty of due care owed to the

public. This, of course, runs afoul of the language in both *Davidson* and *Williams* that carefully limits the duty owed by police to individual members of the general public. Although phrased in terms of a breach of a mandatory duty, the allegations of negligence in *Green,* as well as those in the instant case, actually derive from defendants' status as police officers and the implied contention that they failed to do what reasonably prudent officers would have done in similar circumstances. Such pleading is an attempt to avoid the special relationship doctrine and the requirements of section 815.6 and impose a duty on law enforcement greater than that imposed on others. " 'A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, *but neither does he assume any greater obligation to others individually.*' " (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24, fn. 3, italics in original.)

Moreover, the Legislature has acted to eliminate the use of local police department regulations in pleading a breach of mandatory duty. Under Evidence Code section 669.1, effective January 1, 1984, through December 31, 1986, "a local rule, regulation or guideline setting standards of conduct for peace officers in the use of deadly force shall not be considered a statute, ordinance or regulation of a public entity" for the purposes of the presumptive negligence rule of Evidence Code section 669.

Appended to the legislative enactment (Stats. 1983, ch. 168) is a declaration of legislative findings and policy that indicate an intent to vitiate the *Green* rationale and the case upon which it relied, *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238 [155 Cal.Rptr. 360, 594 P.2d 477].[5]

---

[5]In *Peterson,* a police officer's failure to comply with municipal and police department guidelines for the use of firearms was held to create a presumption of negligence under Evidence Code section 669, subdivision (a).

The Legislature's declaration of intent reads as follows: "Sec. 2. The Legislature finds and declares that some local police agencies have adopted rules and regulations designed to provide guidance and training to peace officers in the exercise of their powers and duties, and that these rules and regulations reflect an effort by police administrators to encourage peace officers to follow procedures that are appropriate to local conditions and which are more restrictive than minimum standards of conduct required by state law. [¶] The Legislature further finds and declares that the adoption of rules and regulations which are intended to elevate the conduct of peace officers beyond minimum state standards should not expose a peace officer, police agency or locality to presumptive civil liability than if those rules had not been adopted. [¶] The Legislature further finds and declares that a court decision [*Peterson*] which interpreted Section 669 of the Evidence Code to raise a presumption of negligence when a peace officer violates a locally adopted rule of conduct does not accurately reflect the intent of the Legislature, and that the effect of the decision has been to discourage police agencies from adopting rules and regulations designed to upgrade the conduct of its peace officers. [¶] The Legislature further finds and declares that in adopting this act it is not the intent of the Legislature to restrict the right of injured parties to pursue civil actions against peace officers or police agencies, but that it is the intent of the Legislature to permit localities to adopt rules of peace officer conduct without fear of presumptive civil liability."

Although the statutory change specifically talks in terms of presumptive negligence under Evidence Code section 669, subdivision (a) we think it clear that the Legislature's intent to limit the use of internal police department regulations applies as well to Government Code section 815.6. Any attempt by plaintiff in the instant case to rely on these internal regulations, must be ignored.

Departmental or municipal policy directives may prescribe what conduct is expected of police personnel under particular circumstances but a deviation from those directives can only serve as a basis for administrative action. They cannot create a duty to individual citizens.

 Plaintiff has made no attempt, either at the trial level or on this appeal, to identify any other enactment creating the duty which he seeks to impose on the officers. In reality, all of the alternatives to making an arrest which plaintiff contends the officers should have pursued would themselves have required action which was the practical equivalent of an arrest. We know of no basis for requiring such action or in fact any authority for the officers to take such action.

In light of the Supreme Court's holdings in *Davidson* and *Williams* and the appellate decisions that have followed (see, e.g., *Harris* v. *Smith, supra,* 157 Cal.App.3d 100; *Rose* v. *County of Plumas, supra,* 152 Cal.App.3d 999; *Jackson* v. *Clements, supra,* 146 Cal.App.3d 983), we can only conclude that the allegations in the instant complaint are patently insufficient to establish a duty of due care and a corresponding basis for civil liability.

Having concluded that plaintiff's allegations fail to establish any duty of care owed to plaintiff, we need not reach the issue of statutory immunity. (See *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203.) We do, however, briefly address plaintiff's contention that California courts should extend civil liability to the fullest extent to deter drunk driving and that dismissal of the City was a violation of the Supreme Court's "resolve to support 'all possible means of deterring persons from driving automobiles after drinking . . . .'" (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 155 [181 Cal.Rptr. 784, 642 P.2d 1305].)

"Although it unquestionably is the policy of this state to deter drunk driving, neither statutory nor decisional law authorizes the recognition of a cause of action against these defendants based on the officers' failure to take the protective action suggested by plaintiffs. As the Supreme Court stated in refusing to impose a duty on police officers to warn potential victims, recognition of such a cause of action 'would raise difficult problems of causation and public policy.' (*Davidson* v. *City of Westminster,* 32 Cal.3d

197, 208.)'' (*Jackson* v. *Clements, supra,* 146 Cal.App.3d at p. 989; see also *Harris* v. *Smith, supra,* 157 Cal.App.3d at p. 109; *Bonds* v. *State of California, supra,* 138 Cal.App.3d at p. 320.)

Under the circumstances, the trial court correctly granted judgment on the pleadings.

The judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 5, 1985. Bird, C. J., did not participate therein.