[No. H004572. Sixth Dist. Aug. 11, 1988.]

CITY OF SUNNYVALE et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
LISA RAGAN, Real Party in Interest.

COUNSEL

G. David Landsness and Rankin, O'Neal, Center, Luckhardt & Lund for Petitioners.

No appearance for Respondent.

Guyton N. Jinkerson for Real Party in Interest.

OPINION

AGLIANO, P. J.—The City of Sunnyvale (City), defendant below, petitions for a writ of mandate, Code of Civil Procedure section 437c, subdivi-

sion (l), to compel entry of summary judgment in its favor. The issue is whether police officers employed by City who had stopped an automobile in which plaintiff was a passenger can be liable in tort to plaintiff for not advising her to get out of the car and find other transportation.

The undisputed facts are as follows: on August 16, 1986, about 1:14 a.m. police officers Swenson and Field, employed by City, stopped an automobile in which plaintiff and real party in interest, Lisa Ragan, was a passenger, along with other persons including codefendant Michael Shinall. Codefendant Randy Corbitt was then driving; he was over the age of 21, and licensed. There were containers of liquor in the vehicle, some opened. The police administered field sobriety tests to Corbitt and Shinall (a minor) and poured out the liquor in the opened containers; they cited Corbitt for driving at an unsafe speed and for driving with an opened container in the vehicle, and cited Shinall for being a minor in possession of alcohol. They then released the parties, who continued driving. Later, at about 3:13 a.m., when Shinall was driving (without being licensed to do so), the vehicle crashed and Miss Ragan was seriously injured.

According to their depositions, both Corbitt and Shinall had been drinking alcoholic beverages and had taken controlled substances before the car stop. Blood tests taken after the accident showed blood-alcohol levels of 0.04 percent for Shinall and 0.15 percent for Corbitt. Shinall's blood also contained methamphetamine and amphetamine.

It is undisputed that during the time between their release from the roadside detention and the accident, Corbitt and Shinall continued to consume alcohol.

In her declaration, Miss Ragan said that after the detention she was directed by one of the officers to get back in the vehicle. She further declared she had no fear for her safety in reentering the vehicle because the officers did not arrest Corbitt or Shinall nor express any concern that they were under the influence and unable to drive safely. She relied on the officers' judgment regarding whether either of these individuals could drive safely. Otherwise she would have called her mother to pick her up, as they had arranged should she need help in such a situation.

Officer Swenson declared that at the stop he conducted a field coordination test of Corbitt and determined that he was not under the influence of alcohol. He did not instruct or suggest that Shinall operate the vehicle. After issuing citations, he released the parties. Officer Field declared similarly that he did not instruct or suggest that Shinall or any other person than Corbitt operate the vehicle.

## Discussion

 City contends that upon these facts the police officers owed no duty to Miss Ragan, or alternatively, if they did, they are immune from liability under the sovereign immunity provisions of the Government Code, particularly the immunity provided for any discretionary decision not to interfere in the situation. (Gov. Code, § 820.2.)

We determine the officers did not breach any duty to Miss Ragan giving rise to tort liability. First, as a matter of sound policy the Legislature has provided immunity for the consequences of a decision not to arrest; hence no duty can be premised on any omission to take Corbitt or Shinall into custody. (Gov. Code, § 846.) As stated in *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 288 [217 Cal.Rptr. 450]: "Under our system of law the power to make an arrest of another individual is a power grudgingly given in furtherance of the public interest in preventing crime. It is a power which is strictly limited and the abuse of such power can result in civil liability. It would be contrary to public policy, simultaneously, to permit the imposition of civil liability for a failure to exercise the power. Hence the immunity is a logical adjunct to the public policy."

Any other actions which the police might have taken would fall into the category of acts to control the conduct of another. As a general rule, one owes no duty to control another's conduct nor to warn those endangered by such conduct, absent a special relationship between the actor and the third person, or between the actor and the victim which imposes a duty to control conduct. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]; *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983, 987 [194 Cal.Rptr. 553].) Many recent cases which have considered what duty a police officer owes to members of the public have concluded the police have no duty to protect individuals from potential wrongdoers.

Thus, *Jackson* v. *Clements, supra,* held that police officers who investigated a party where minors were drinking alcoholic beverages and where intoxicated minors had said they would drive themselves home had no duty to prevent the minors from driving or to protect a minor girl who accepted a ride with one of the drivers. The court stated as a general principle that neither a police officer's observation of conduct which could foreseeably create a risk of harm to others nor his temporary detention of such potentially dangerous individual creates a special relationship imposing on the officer a duty to control that citizen's subsequent behavior. (*Jackson* v. *Clements, supra,* 146 Cal.App.3d at p. 987, citing *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 205.)

Similarly in *Davidson* v. *City of Westminster, supra,* the court found a police officer's surveillance of a laundromat and recognition of a potential assailant imposed no relationship requiring the police to control the assailant's conduct. In that case the plaintiff was stabbed in a laundromat which was under police surveillance. She alleged the officers knew of other stabbings in the laundromat or nearby, knew that she was in the laundromat, and had identified a man on the premises as the likely perpetrator of a recent stabbing there. The officers saw the man enter the laundromat several times but neither intervened nor warned plaintiff, who was stabbed. The court found the complaint did not state a cause of action for negligence because the officers did not increase the risk of harm by failing to stop a dangerous individual. Absent a special relationship the officers owe the plaintiff no duty where the alleged tort "consists merely in police nonfeasance." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 202; accord, *Williams* v. *State of California* (1983) 34 Cal.3d 18, 22-23 [192 Cal.Rptr. 233, 664 P.2d 137].) (The decision in *Williams* v. *State of California* found no duty of the police to investigate an accident or preserve evidence.)

*Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070 [235 Cal.Rptr. 844], held that a police dispatcher was not liable for a rape and assault on the victim when neighbors called the dispatcher and the latter elected to telephone the victim and berate her over the telephone while the attacker escalated his violence. The court discussed a number of cases finding police officers not liable for failure to protect and pointed out they are generally grounded in the common law distinction between misfeasance and nonfeasance. (*Id.* at p. 1077.) One who has not created a peril is not liable in tort for merely failing to take affirmative steps to assist or protect another, absent a special relationship giving rise to a duty so to act. (*Ibid.,* citing 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.) Accordingly, recovery is denied for police failure to investigate or respond to requests for assistance, absent express promises and reliance thereon. (*Ibid.,* citing, e.g., *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470].) The *Sullivan* decision held first that the dispatcher had no duty to prevent the attack on plaintiff, and second, that the dispatcher was immune from any liability for her affirmative act in telephoning the victim's apartment because the choice whether or not to call was a discretionary decision "invoking the ' "personal deliberation, decision and judgment" ' of the dispatcher and as such was cloaked with discretionary immunity under Government Code section 820.2." (*Sullivan* v. *City of Sacramento, supra,* 190 Cal.App.3d at p. 1081, citing *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 261 [74 Cal.Rptr. 389, 449 P.2d 453].) An alternate ground of

the latter holding was that the dispatcher's call was not alleged to have increased the risk to plaintiff.

Distinguishable are decisions where the police affirmatively created a peril to the victim by voluntarily assuming a duty to protect upon which the victim relied, and then discharging that function negligently. (E.g., *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82] [officer came to aid of stranded motorist on freeway, parked his patrol car in protective position, called tow truck, then drove off leaving driver in position of danger where he was struck by another vehicle]; *McCorkle* v. *City of Los Angeles, supra,* 70 Cal.2d 252 [police investigating an accident directed plaintiff to follow officer into the middle of an intersection where he was hit by another car]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] [officer created the peril]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508] [sheriff undertook to warn plaintiffs of release of dangerous prisoner and did not].)

Miss Ragan's reliance on the decision in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907], is misplaced. That decision considered the statutory duty of a common carrier (the Rapid Transit District) to use utmost care and diligence for its passengers' safety. (Civ. Code, § 2100.) Accordingly there the court found a bus driver for the district could be liable for failing to prevent harm to passengers occurring during a fight on the bus. The court also held there was no discretionary act immunity because a driver's obligation to protect his passengers is ministerial and does not involve policymaking discretionary decisions. The presence of a mandatory statutory duty clearly distinguishes *Lopez* from the situation of a police officer; as the decisions have pointed out, the absence of such an express statutory obligation prevents imposition of a general duty on police officers to protect members of the public from harm. (See, e.g., *Lehto* v. *City of Oxnard, supra,* 171 Cal.App.3d at pp. 292-293.)

We perceive no substantive differences between the facts of this case and the situations in such decisions as *Lehto* v. *City of Oxnard, supra,* 171 Cal.App.3d 285 and *Jackson* v. *Clements, supra,* 146 Cal.App.3d 983. In fact, *Lehto* is almost precisely identical. The *Lehto* court held that the city was not liable in tort for the alleged negligence of its police officers in failing to prevent a drunken driver from driving after they had stopped him for a traffic violation. These facts differ from ours only in that there, the eventual victim never had any contact with the police officers, whereas here, the police saw that Miss Ragan was present in the car. However, as in *Jackson* v. *Clements,* the police had no duty to take charge of the situation, albeit fraught with danger, and to persuade the minor passengers to make

other transportation arrangements. The police issued what citations were appropriate, which is all that they were lawfully required to do. They had no lawful authority to confiscate sealed containers of beverages, since the driver was over 21, nor had they authority to take him into custody or to impound the vehicle. Their failure to advise Miss Ragan to leave the vehicle is not a breach of any affirmative duty which they owed her. Her mere presence in the stopped vehicle does not establish any protective duty toward her to be imposed upon the officers. (*Jackson* v. *Clements, supra,* 146 Cal.App.3d 983.)

Although Miss Ragan claims that she relied on their conduct, the officers did nothing specific to induce her reliance. In her declaration, Miss Ragan states that after the detention "I was directed by one of the officers to get back in Mr. Corbitt's vehicle." She relies on this statement to establish affirmative action by the police inducing her to place herself in a position of peril. However, the statement is insufficient to do so. First, she does not assert that this particular conduct caused her to return to the car. Second, by using the passive voice ("I was directed . . . to get back in . . . [the] vehicle.") she avoids providing the exact language used by the officers and thus falls short of her burden of establishing what precisely the police did which may now be seen as having increased her peril. Further, although her present argument suggests the officers somehow induced or compelled her to get back into the car, plainly the officers had no authority to order her to do so. She does not say in so many words that the police ordered her to reenter the vehicle or suggested that she do so; for example, she does not allege that she asked the police if it was safe to reenter and was told that it was. The most plausible inference to be derived from her declaration is that the police informed her that the detention was completed and she could now reenter the vehicle.

Fairly read, her declaration establishes no more than her reliance upon one of two omissions: police failure to either (1) take Corbitt into custody, or (2) advise her not to get back into the car. As stated, these omissions to take charge of the situation and of her welfare are not actionable in tort.

As in *Lehto* v. *City of Oxnard, supra,* there is here "a total absence of the factors articulated in either *Williams* or *Davidson* [*Williams* v. *State of California, supra,* 34 Cal.3d 18; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197] as being necessary for the imposition of liability on the City under general tort theory. The officers involved did not create the peril to plaintiff, they did not voluntarily assume a special duty to protect him, they made no promise or statement to induce his reliance, nor did they increase the risk to him that would have otherwise existed." (*Lehto* v. *City of Oxnard, supra,* 171 Cal.App.3d at p. 291.) The same is true here. The police

failure to advise Miss Ragan to leave the vehicle is not an actionable breach of duty to her.

It has been observed that recognition of a duty of police officers to warn potential victims could raise "difficult problems of causation and public policy." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 208; see also *Jackson* v. *Clements, supra,* 146 Cal.App.3d 983, 989.) The facts here illuminate the truth of that observation. The threat of liability would place the officers between the rock of making a false arrest and the hard place of civil liability for failure to do so; hence the absence of duty and the statutory immunity of Government Code section 846. On the other hand, a penalty for not taking other action not only puts a heavy burden upon them to make other arrangements for passengers lawfully present in vehicles but also presents difficult causation problems for the jury. For example, here Corbitt and Shinall continued to drink after the detention; hence it is difficult to show that the police were at fault for not anticipating what was to follow.

Miss Ragan also claims that disputed evidence of these facts prevents summary judgment: (1) whether Corbitt and Shinall were intoxicated at the time of the stop; (2) whether Miss Ragan relied on the police in deciding to stay in the car. There is evidence of these facts but even if we assume (in accordance with the general rules of review of a summary judgment motion) that they are established in plaintiff's favor that result is irrelevant. Whether or not Corbitt and Shinall had been drinking alcoholic beverages before the car stop, the police are immune for any failure to take them into custody. Further, whether or not Miss Ragan relied on the fact that the police did not arrest her companions is not, as a matter of law, a basis to find justifiable reliance or a special relationship. Reliance must be justified by something the police have done to invoke such reliance. Here they did nothing other than discharge their function of stopping and citing.

Miss Ragan contends we should decline prerogative writ review for these reasons: no transcript of the hearing on the motion was furnished, a ground of denial under *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450]; City has not demonstrated inadequacy of appellate remedies (*Krueger* v. *Superior Court* (1979) 89 Cal.App.3d 934 [152 Cal.Rptr. 870]); and the petition is allegedly late.

The record does not establish that the petition is late. The order denying summary judgment is dated May 12, 1988. The petition was filed June 13, 1988. The period of limitations for filing a petition for a writ of mandate pursuant to Code of Civil Procedure section 437c, subdivision (*l*) is 10 days after service of written notice of entry of order [plus time for mail service of notice]. There is no proof of service of notice of entry of the order in the

record. City says it never received the order and finally learned of it by checking the court file on May 31. Counsel for real party says he received a copy May 17. Real party does not contradict City's assertion it had no actual notice or service. We conclude that untimeliness has not been shown.

As to the other contentions directed to suitability of writ review, we believe City filed a sufficiently complete record to give this court a full picture of what took place in the trial court, and further believe writ review as authorized by the statute is warranted to prevent a needless trial.

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and she has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue as prayed, directing respondent court to vacate its order denying petitioner's motion for summary judgment, and instead to make a different order granting summary judgment to petitioner. Costs on appeal to the City of Sunnyvale.

Brauer, J., and Capaccioli, J., concurred.