[No. H009300. Sixth Dist. Feb. 24, 1993.]

JOSEFINA HERNANDEZ, Plaintiff and Appellant, v.
CITY OF SAN JOSE et al., Defendants and Respondents.

COUNSEL

John Kevin Crowley for Plaintiff and Appellant.

Joan R. Gallo, City Attorney, and Ralph C. Greene, Chief Trial Attorney, for Defendants and Respondents.

OPINION

ELIA, J.—Plaintiff Josefina Hernandez filed an unverified third amended complaint against the City of San Jose (City) and others on October 27, 1987.[1] The complaint sought damages due to the alleged wrongful death of plaintiff's 15-year-old son, Robert.[2] City filed an answer to the complaint on March 3, 1988, generally denying all allegations in the complaint. On September 10, 1991, City moved for summary judgment or summary adjudication arguing it owed no duty to Robert, any duty it had was extinguished, and there was no proximate causation between acts of City's police officers and Robert's death. Plaintiff opposed the motion, and a hearing was held on October 10, 1991, after which the court granted City's motion for summary judgment. Plaintiff timely appealed from the ensuing judgment.

Plaintiff argues here that City was not entitled to summary judgment under the facts of this case. We disagree, and therefore affirm.

*Factual and Procedural Background*

The undisputed facts indicate that on November 16, 1985, Robert, Augustine Reyes, and Juan Reyes, were passengers in a vehicle being driven by George Interinto Orozco, Jr., around 11 p.m. The vehicle, a 1977 two-door Chevrolet, was observed by two City police officers travelling at a high rate

---

[1] The other defendants are Juan Sotello, Maria Sotello, Rosa Corona, George Orozco, George Orozco, Jr., Grandma Orozco, County of Santa Clara, State of California and Does I through C, inclusive.

[2] As several people have the same last name, we will refer to the young men who were in the vehicle stopped by the officers by their first names only.

of speed in a southerly direction near the intersection of Lawrence Expressway and Bolinger. Officers Flosi and Valencia stopped the vehicle in the area of Lawrence Expressway and Saratoga Avenue and gave a citation to George for excessive speed and being an unlicensed driver.

All of the passengers of the Chevrolet were under age and without driver's licenses. The vehicle owner, Rosa Corona, who is George's mother, was contacted. The car was towed at the direction of the officers. George then called his mother, who was not home. The young men later met Juan Sotello and decided to get a ride home with him.

At approximately 1 a.m., Sotello's vehicle was in a single-car accident near the intersection of Highways 9 and 236 in Santa Cruz County. Sotello and his six passengers (Robert, George, Augustine, Juan, Raymond Martinez, and Sirilo Loredo) were all injured. Robert died on November 27, 1985, as a result of the injuries he sustained in the accident.

Plaintiff's third amended complaint alleged that Robert's death was a direct and proximate result of the negligence of the officers in failing to provide and/or arrange safe and adequate transportation for Robert and/or notifying plaintiff of the whereabouts of Robert so safe transportation could be made available. City moved for summary judgment arguing no duty was owed to Robert as he was offered a ride and refused; any duty owed was extinguished when he refused a ride and entered Sotello's vehicle; and there was no proximate causation between the acts of the City police officers and Robert's death. Plaintiff opposed the motion arguing there remained triable issues of material fact as to whether City breached its duty of care respecting Robert. The disputed facts included whether or not the officers offered the young men a ride home or prevented the young men from getting a ride with the tow truck driver, and whether or not Corona asked the police to hold the young men so she could pick them up.

In the hearing on the motion the court stated it assumed, for purposes of the motion, that no ride was offered the young men and the officers refused to let them go in the tow truck. However the court found that, as Robert was killed as a result of Sotello's one-vehicle accident almost two hours after the car he was riding in was stopped by the officers, this is not the type of risk the officers could anticipate under the circumstances of the case. City's motion for summary judgment was therefore granted.

Plaintiff argues in this appeal that City was not entitled to summary judgment under the facts of the case. Plaintiff argues that the facts of the

case present a prima facie case of liability on the part of City, and the officers' actions are not protected by any Government Code immunity. Plaintiff also argues that, because there is conflicting evidence as to material facts upon which liability turns, summary judgment should have been denied. City argues it has established facts which negate any theory of liability against it, and summary judgment was properly granted.

### Discussion

■ A motion for summary judgment should be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To determine whether there is a material factual issue it is proper to compare the separate statements of facts and supporting evidence in the motion and the opposition. (*ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 311 [262 Cal.Rptr. 773].)

■ Since a motion for summary judgment raises only questions of law regarding the construction and effect of the supporting and opposing papers, this court reviews them independently. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable material factual issue." (*Id.* at pp. 1064-1065.) With this in mind, we turn to the applicable law governing the allegations in the moving and opposing papers in the motion for summary judgment.

■ "To establish negligence, a party must prove the following: '(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; (c) the breach as the *proximate* or *legal cause* of the resulting injury. [Citations.]' " (*Hair* v. *State of California* (1991) 2 Cal.App.4th 321, 329 [2 Cal.Rptr.2d 871], italics in original.) ■ At issue here is whether plaintiff can show that the police officers breached any legal duty they owed to Robert. We believe she cannot.

"Neither a public entity nor a public employee is liable for injury by the failure to make an arrest or by the failure to retain an arrested person in

custody." (Gov. Code, § 846.) Hence, no duty can be premised on the failure to take Robert and the other young men into custody for a curfew violation. (See San Jose City Ord., § 10.28.010.) "As stated in *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 288 . . . : 'Under our system of law the power to make an arrest of another individual is a power grudgingly given in furtherance of the public interest in preventing crime. It is a power which is strictly limited and the abuse of such power can result in civil liability. It would be contrary to public policy, simultaneously, to permit the imposition of civil liability for a failure to exercise the power. Hence the immunity is a logical adjunct to the public policy.' [¶] Any other actions which the police might have taken would fall into the category of acts to control the conduct of another. ■ As a general rule, one owes no duty to control another's conduct nor to warn those endangered by such conduct, absent a special relationship between the actor and the third person, or between the actor and the victim which imposes a duty to control conduct. [Citations.] Many recent cases which have considered what duty a police officer owes to members of the public have concluded the police have no duty to protect individuals from potential wrongdoers." (*City of Sunnyvale* v. *Superior Court* (1988) 203 Cal.App.3d 839, 842 [250 Cal.Rptr. 214].)

In *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894], the court found a police officer's surveillance of a laundromat and recognition of a potential assailant imposed no special relationship requiring the police to control the assailant's conduct. Thus, the court found the complaint, filed by a woman who officers knew was in the laundromat and was subsequently stabbed by the assailant, did not state a cause of action for negligence because the officers did not increase the risk of harm by failing to stop the assailant. Absent a special relationship the officers owed the plaintiff no duty where the alleged tort consisted "merely in police nonfeasance." (*Id.* at p. 202.)

In *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070 [235 Cal.Rptr. 844], the court held the city not liable for an assault and rape of the plaintiff when neighbors called the police and a dispatcher called and berated the victim while the assailant stood armed at her side. The court stated cases finding police officers not liable for failure to protect are generally grounded in the common law distinction between misfeasance and nonfeasance. (*Id.* at p. 1077.) "One who has not created a peril is not liable in tort for merely failing to take affirmative steps to assist or protect another, absent a special relationship giving rise to a duty to so act. [Citation.]" (*City of Sunnyvale* v. *Superior Court, supra*, 203 Cal.App.3d at p. 843, citing *Sullivan, supra*, at p. 1077.)

"Distinguishable are decisions where the police affirmatively created a peril to the victim by voluntarily assuming a duty to protect upon which the

victim relied, and then discharging that function negligently. (E.g., *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 . . . [officer came to aid of stranded motorist on freeway, parked his patrol car in protective position, called tow truck, then drove off leaving driver in position of danger where he was struck by another vehicle]; *McCorkle* v. *City of Los Angeles* [(1969)] 70 Cal.2d 252 [74 Cal.Rptr. 449 P.2d 453] [police investigating an accident directed plaintiff to follow officer into the middle of an intersection where he was hit by another car]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 . . . [officer created the peril]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 . . . [sheriff undertook to warn plaintiffs of release of dangerous prisoner and did not.])" (*City of Sunnyvale, supra,* 203 Cal.App.3d at p. 844.) That is not the case here; we perceive no substantive differences between the facts of this case and the situations in such cases as *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197; *Sullivan* v. *City of Sacramento, supra,* 190 Cal.App.3d 1070; and *City of Sunnyvale* v. *Superior Court, supra,* 203 Cal.App.3d 839.

The police had no duty to take charge of the young men or to make other transportation arrangements for them. The officers issued appropriate citations which is all they were lawfully required to do. Neither Robert's mere presence in the stopped vehicle nor the fact he was a minor established any special relationship or protective duty toward him that could be imposed upon the officers. (See *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553]; *City of Sunnyvale* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 844-845.) That the officers impounded the vehicle did not create any peril to Robert and the other young men as none of them could have lawfully driven the vehicle. Nor did the impounding of the vehicle and alleged refusal to let the young men get a ride with the tow truck driver increase any risk of harm to Robert that otherwise existed. A one-car accident caused by the driver of the vehicle the young men headed home with was no more a risk before the officers impounded the vehicle than it was after. (See *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208; *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 290-291 [217 Cal.Rptr. 450].)

As the officers' actions as alleged by plaintiff did not establish a special relationship, or create or increase the risk of harm to Robert, plaintiff's complaint did not state any theory of liability against City. City has demonstrated that it is entitled to judgment as a matter of law. The motion for summary judgment was properly granted.

The judgment is affirmed.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied March 17, 1993, and appellant's petition for review by the Supreme Court was denied April 28, 1993.