[No. E044951. Fourth Dist., Div. Two. Oct. 23, 2009.]

RAY CORONA, SR., et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

The Law Offices of John Burton and John Burton for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, James M. Schiavenza, Assistant Attorney General, Marsha S. Miller, Karen S. Darling and Donna M. Dean, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**RAMIREZ, P. J.**—Plaintiffs and appellants Ray Corona, Sr., and his wife, Arlene Corona, appeal from the trial court's judgment dismissing their lawsuit after sustaining the demurrer of defendants and respondents State of California, Department of Consumer Affairs, and State Athletic Commission (collectively, the State). Specifically, the Coronas argue the trial court erred when it found that Government Code section 818.4,[1] which applies to discretionary decisions by public officials, applies here to immunize the State from liability. As discussed below, we conclude that California's State Athletic Commission (the Commission) has a mandatory duty to license and/or allow to participate in boxing matches only those boxers who present proof of a negative human immunodeficiency virus (HIV) test. Thus, the State can be held liable under section 815.6 for failing to carry out this duty and is not immune from liability under section 818.4.

### STATEMENT OF FACTS[2] AND PROCEDURE

Ray Corona is a professional boxing referee licensed by the State of California. On June 3, 2005, he refereed a match to which he was assigned by the Commission. By letter dated June 9, 2005, the Commission's executive director informed Ray Corona that one of the boxers in the June 3, 2005, match " 'was licensed and allowed to fight without having the results of the blood tests for detection of HIV.' " The fighter at some point did test positive for HIV. The letter also stated, " 'you may have unwittingly been exposed to a transmittable blood-borne disease,' " " 'the Commission strongly encourages you to be tested,' " and " '[y]ou should also think about what might happen if, before you receive your test results, you engage in activities in which you might transmit one of those diseases to someone else.' "

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] The statement of facts is taken exclusively from the first amended complaint (FAC) filed in the superior court on April 4, 2007.

The FAC alleges that "[l]ike most fights, this one involved numerous cuts and splashing of blood. During the week following the bout, plaintiffs engaged in their regular marital activities, including unprotected sexual intercourse."

After complying with the requirements of the Tort Claims Act (§ 810 et seq.), the Coronas filed the FAC on April 4, 2007. The complaint alleged two causes of action, for violation of a mandatory duty under section 815.6 and vicarious liability for the negligence of state employees, agents, etc., under sections 815.2, subdivision (a), 815.4 and 820, subdivision (a).

The State filed a demurrer to the FAC on May 3, 2007. The Coronas filed their points and authorities in opposition on May 16, 2007. The State replied to the Coronas' opposition on May 22, 2007.

At the hearing on the demurrer set for May 29, 2007, the court indicated its tentative ruling was to sustain the demurrer based on governmental immunity under section 818.4, but stated it wanted to more closely examine the issue. The court denied the Coronas' motion to file a supplemental memorandum.

At the continued hearing on June 21, 2007, the court confirmed its tentative ruling to sustain the demurrer. The court held that the State did have a mandatory duty to the public and the Coronas under Business and Professions Code section 18712, subdivision (a) to "appropriately license and regulate boxers." However, the court also held that the State's actions in sanctioning boxing matches are immune from liability under section 818.4 because they involved the issuance of a license, permit, approval or authorization. On December 3, 2007, the court entered an order sustaining the demurrer without leave to amend and dismissing the action. This appeal followed.

## DISCUSSION

The Coronas argue that the State was not immune under section 818.4 because the Commission "did not have the authority to issue 'a license, permit, approval, or authorization of the fight in question' without first obtaining a negative test for HIV/AIDS."

■ Before determining whether the State was immune under section 818.4, we must first examine, as did the trial court, whether the Commission had a mandatory duty imposed by statute. This is because, under section 815, a governmental agency is not liable for injuries unless the liability is

specifically imposed by statute. "This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. . . . [¶] . . . [¶] . . . [T]here is no liability in the absence of a statute declaring such liability." (Legis. Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 815, p. 167.)

### 1. *Section 815.6—Mandatory Duty*

■ Section 815.6 further provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." "[A]pplication of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. [Citation.]" (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983].) Whether an enactment is intended to impose a mandatory duty, as opposed to a mere obligation to perform a discretionary function, is a question of law for the court. (*Id.* at p. 499.)

Here, the statute in question provides, in relevant part, as follows: "[A]ny person applying for a license or the renewal of a license as a professional boxer . . . shall present documentary evidence satisfactory to the commission that the applicant has been administered a test, by a laboratory in the United States that possesses a certificate under the Clinical Laboratory Improvement Act (42 U.S.C. Sec. 263a), to detect . . . the human immunodeficiency virus (HIV)[,] . . . hepatitis C virus (HCV) and . . . hepatitis B virus (HBV) within 30 days prior to the date of the application and that the results of all three tests are negative. *A negative report for all three tests shall also be required* of a professional boxer . . . prior to competing in a match that will occur 180 days or more after the date of the tests submitted for the issuance or renewal of his or her license." (Bus. & Prof. Code, § 18712, subd. (a), italics added.)

■ We read Business and Professions Code section 18712 as imposing a mandatory duty upon the Commission to require a boxer to provide a

negative HIV test from an approved laboratory before issuing the annual boxing license. The Commission must also require a negative test before allowing the boxer to participate in a match that takes place more than six months after the date of the previous negative test. Business and Professions Code section 18712 uses mandatory language when it provides that a boxer "shall present documentary evidence" of a negative HIV test. Business and Professions Code section 18712 again uses mandatory language when it provides that "[a] negative report for [HIV] shall also be required" of a boxer prior to competing in a boxing match that will occur more than six months after the date of a previous HIV test. In addition, the statute simply does not grant the Commission any discretion to waive the HIV test requirement or to grant a license or allow a boxer to participate in a later match without providing a negative HIV test.

This is quite similar to the statute that was interpreted by our Supreme Court in *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606] (*Morris*). In *Morris*, the Legislature mandated in Labor Code section 3800 that counties require applicants for a building permit to have workers' compensation insurance. The statute provided that "[e]very county . . . which requires [a building permit] . . . shall require that each applicant for [such] permit" have on file a certificate of workers' compensation insurance. The court found that, in using this language, the Legislature "intended the filing of a 'certificate of insurance' to constitute a *condition precedent* to the issuance of a building permit" and thus imposed a mandatory duty under section 815.6. (*Morris, supra*, at p. 907 & fn. 3, italics added.) In the same way, the Legislature clearly intended that the filing of a negative HIV test with the Commission be a condition precedent to the issuance of a boxing license or authorization to participate in a later boxing match. Just as counties had no discretion to issue a building permit unless the applicant provided a certificate of insurance, the Commission has no discretion to allow a boxer to box unless the boxer provides a negative HIV test.

The State understandably seeks to characterize the language in Business and Professions Code section 18712 as imposing a duty solely on the applicant to present negative HIV test results, rather than on the Commission to require them, before granting a boxing license or authorization to participate in a boxing match. This is because the statute is worded to focus on the actions of the applicant (an applicant "shall present documentary evidence" and "[a] negative report . . . shall also be required of a professional boxer") rather than on the actions of the Commission. While we would prefer that the Legislature had used more active language, such as, "the Commission shall

require a negative report . . . ," rather than the passive, "[a] negative report . . . shall also be required . . . ," the only reasonable reading of Business and Professions Code section 18712 is that the Commission *may not allow* a boxer to box without submitting very specific test results, in a very specific form, at specific intervals.

The State cites to a number of cases as supporting its assertion that Business and Professions Code section 18712 is not specific enough (i.e., does not require "a specific act under specified conditions") to impose a mandatory duty under Government Code section 815.6. We examine each of these cases in turn to determine whether they can provide guidance here. The State first cites to *Quackenbush v. Superior Court* (1997) 57 Cal.App.4th 660 [67 Cal.Rptr.2d 300] to imply that no mandatory duty exists where the public entity merely reviews the actions of the licensee. However, in that case, the Legislature charged the Insurance Commissioner with the duty to " 'whenever it appears necessary, examine the business and affairs of a [licensee] company . . . .' " (*Id.* at p. 663.) This instruction from the Legislature leaves much discretion to the Insurance Commissioner as to whether and when to inspect a business and how to go about performing that inspection. In contrast, the Legislature has, in effect, prohibited the Commission from licensing a boxer who does not present specified test results, which themselves must be issued by a laboratory that is certified under the Clinical Laboratories Improvement Act of 1967 (42 U.S.C. § 263a), as spelled out in detail by the Legislature in Business and Professions Code section 18712. This is a far cry from the discretion given to the Insurance Commissioner generally to inspect the "business and affairs" of licensees "whenever it appears necessary."

In *Gray v. State of California* (1989) 207 Cal.App.3d 151 [254 Cal.Rptr. 581], the family of a murdered sheriff's deputy sued the state Department of Justice for not discovering that the murderer was officially found to be "mentally ill" by another state when it reviewed his application to purchase a handgun. The statute at issue stated: "If the department determines that the purchaser is a person described in [Penal Code] Section 12021 . . . or Section 8100 or 8103 of the Welfare and Institutions Code, it shall immediately notify the dealer . . . of that fact." (Pen. Code, former § 12076, subd. (d)(3), fn. omitted.) The appellate court concluded that the Legislature did not impose upon the Department of Justice a mandatory duty to search out-of-state databases. This is because the statute did not detail the type of investigation that the Department of Justice must conduct before determining whether an applicant was eligible to purchase a handgun. This contrasts with

Business and Professions Code section 18712, which, again, is very explicit as to how the Commission is to determine a boxer's eligibility.

In *MacDonald v. State of California* (1991) 230 Cal.App.3d 319 [281 Cal.Rptr. 317], the state could not be liable under section 815.6 when a daycare provider injured a child in her care, despite allegations that the state failed to properly inspect the daycare provider and investigate complaints against her in the course of its licensing activities. This is because, although the Legislature provided that site visitations "shall be required" prior to initial licensing, upon renewal of a license, and upon a complaint, the Legislature allowed the state to exercise discretion "in deciding what action to take, and when, to evaluate and assess a particular situation." (*MacDonald v. State of California, supra,* at p. 331.) In contrast, the Legislature did not grant such discretion to the Commission as to the time or manner in which it was to evaluate the eligibility of each boxer. Rather, the Legislature directed the Commission to determine at specified intervals whether the boxer could provide the specified test results. The Legislature did not give the Commission any discretion to license a boxer or allow a boxer to fight if the boxer does not provide the required test results in the correct form at the specified times.

The State cites to *Brenneman v. State of California* (1989) 208 Cal.App.3d 812 [256 Cal.Rptr. 363] for the proposition that a mandatory duty cannot be implied or presumed, i.e., a mandatory duty to investigate does not impose a mandatory duty to take any particular action. In *Brenneman,* the "California Department of Corrections Parole Procedures Manual-Felon (Manual) . . . mandated an initial reassessment of [a] parolee's 'risks and needs' between 75 and 105 days from the date of release." (*Id.* at p. 815.) A parolee murdered a young boy 111 days after being released on parole, and without having undergone the initial reassessment. The boy's parents sued the state, alleging, in part, that the manual imposed a mandatory duty upon the state, pursuant to section 815.6, to take action to prevent the murder. The appellate court disagreed, holding that, while the state did have a duty to perform the reassessment, which the court characterized as an investigation, this duty did not in turn trigger any duty to perform a specific action. In other words, once the state performed the reassessment, it retained discretion to decide what action to take as a result of the information gathered during the reassessment. This is in stark contrast to Business and Professions Code section 18712, which does not allow the Commission to license a boxer or allow a boxer to participate in a match if the boxer does not provide the required test results in the required form at the intervals specified in the statute.

In *Wood v. County of San Joaquin* (2003) 111 Cal.App.4th 960 [4 Cal.Rptr.3d 340], a fisherman and his son were killed by a speeding motorboat. The surviving family attempted to establish that the Harbors and Navigation Code imposed a mandatory duty on the county where two statutes read together stated that the county "shall enforce" a five-mile-per-hour speed limit. The appellate court held that the county was not liable under section 815.6 because the county was merely charged with enforcing the speed limit rather than with itself complying with the speed limit. (*Wood*, at p. 974.) However, the appellate court itself distinguished this case from a line of cases, including *Morris*, where the public entity could be liable under section 815.6 for failing to comply with specific standards for conducting its duties to oversee an industry, where the standards were developed and clearly set forth by the Legislature. In contrast, the Legislature had not specified how the county "shall enforce" the speed limit, whether by placing physical barriers or speed limit signs, or by arresting violators. (*Wood*, at p. 975.) As discussed above, the standards set forth in Business and Professions Code section 18712 are similar in specificity to those in the statute discussed in *Morris*, much more so than to the standard set forth in *Wood*.

In sum, the cases the State cited in its brief concern enactments that are far less specific and give the government entity considerably more leeway as to how to implement them than either Business and Professions Code section 18712 or the workers' compensation/building permit statute in *Morris*. For this reason, we are not persuaded to alter our initial conclusion that Business and Professions Code section 18712 imposes a mandatory duty upon the Commission to refrain from sanctioning a boxer who does not provide a negative HIV test.

## 2. Section 818.4—Licensing Immunity

Now that we have determined that Business and Professions Code section 18712 imposes a mandatory duty upon the Commission under Government Code section 815.6, we examine whether the Commission is nevertheless immune under Government Code section 818.4.

 Section 818.4 provides, in part: "A public entity is not liable for an injury caused by the issuance . . . of . . . any permit, license . . . or similar authorization where the public entity . . . is authorized by enactment to determine whether or not such authorization should be issued . . . ." Our courts have determined that this means the entity is immune if it (1) issued a permit, license or similar authorization, and (2) exercises discretion in determining whether to issue the permit, license or similar authorization.

(*Sonoma Ag Art v. Department of Food & Agriculture* (2004) 125 Cal.App.4th 122, 126 [22 Cal.Rptr.3d 468], citing *Chaplis v. County of Monterey* (1979) 97 Cal.App.3d 249, 256 [158 Cal.Rptr. 395].) ■ We have already determined above that the Commission has a mandatory duty *not* to issue a boxing license or authorization to participate in a boxing match if the applicant cannot produce the specified proof of a negative HIV test. Thus, under the standard set forth in the cases cited immediately above, the State is not immune from liability under section 818.4.

■ Contrary to the State's assertion in its respondent's brief that "licensing immunity . . . is absolute" even where the public entity has a mandatory duty to act, case law is clear that section 818.4 immunizes only discretionary decisions, not mandatory actions. "[G]iven a mandatory duty, the liability imposed by Government Code section 815.6 . . . takes precedence over the immunity provisions of Government Code section 818.4 . . . ." (*Slagle Constr. Co. v. County of Contra Costa* (1977) 67 Cal.App.3d 559, 562 [136 Cal.Rptr. 748], fns. omitted.) The immunity granted under section 818.4 was "intended to confer immunity only in connection with discretionary activities, and not in connection with mandatory duties that cannot be ignored." (*Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 628 [101 Cal.Rptr.2d 48].)

■ The appellate court in *Morris* explained that the Legislature "has reached the basic policy decision that a 'certificate of insurance' should be a mandatory prerequisite to the issuance of a building permit" (*Morris, supra,* 18 Cal.3d at p. 916) and thus there is no licensing immunity under the statute at issue there. Similarly, the Legislature in enacting Business and Professions Code section 18712 has reached the basic policy decision that a negative HIV test is a mandatory prerequisite to granting a boxing license or allowing a boxer to participate in a boxing match that takes place more than six months after a boxer was tested for HIV to obtain the license. The Commission has no discretion to issue a boxing license or authorize a boxer to participate in a match unless the boxer submits a negative HIV test. The Commission thus violated its mandatory duty when, as was alleged in the FAC, it granted the boxer in question a boxing license and allowed him to participate in the June 3, 2005, boxing match without submitting a negative HIV test. For this reason, the State is not entitled to immunity under section 818.4.

We find the State's remaining arguments to be without merit.

## Disposition

The trial court's order sustaining the demurrer without leave to amend and its subsequent judgment of dismissal are reversed. The case is remanded to the trial court with orders to enter a new order overruling the demurrer. The State shall pay the Coronas' costs on appeal.

McKinster, J., and Miller, J., concurred.